UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | |
|---|---|
| **CERKEZI ENTERPRISES L.L.C.,** § <br> **d/b/a Euro Car Tech, and ELIO CERKEZI** § <br>   *Plaintiffs*, § <br> § <br> **v.** § <br> § <br> **CITY OF ARLINGTON, Rick Ripley,** § <br> **Abelardo Gomez III, Zac Scott** § <br>   *Defendants*. § | **Cause no. 4:23-cv-00991-P** |

## PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Plaintiff replies herein to *Defendant's Response to Plaintiffs' Application for Preliminary Injunction and Brief in Support* [Doc. 9, "Response"]. Plaintiffs incorporate their *Original Complaint* and Appendix, Docs. 1 and 1-1 respectively. Defendants have had ample time to find some justification for their actions, but have failed to show this Court the power to violate Plaintiff's settled rights by making his major auto repair business illegal and threaten state elimination without paying notice compensation after encouraging his investment, providing him a certificate of occupancy, and allowing him to operate for years without bureaucratic molestation.

### I.    ARGUMENT

**A. Plaintiffs have settled rights in operating their major auto repair business.**

1.    In their Response, Defendants fail to show that their unilateral amendment of the Certificate of Occupancy ("CO") without notice or opportunity to be heard disrupted Plaintiff's settled expectations, which were based on reasonable reliance on the continued application of the law that the City had applied to Plaintiff for four years. Further, the cited, bold, all-caps, language in the Construction Code §4.15 by Defendants does not indemnify the City for constitutional violations against Plaintiffs by Defendants. *See Response,* pg. 7-8.

2.    The issue of settled rights and amended ordinances has been explored in recent short term-term rental cases. While apologizing for the extensive cites, these cases, including *TXI Operations,*

*LP v. City of McKinney*, Civil Action No. 4:20-cv-353, 2023 U.S. Dist. LEXIS 5100 (E.D. Tex. 2023) and *Zaatari v. City of Austin*, 615 S.W.3d 172, 191-92 (Tex. App.—Austin 2019, pet. denied), are directly on point, which can be summarized: "[A] law that upsets a person's settled expectations in reasonable reliance upon the law is unconstitutionally retroactive, regardless of whether the right is vested*." TXI Operations, LP,* 2023 U.S. Dist. LEXIS 5100 at *62.

3. In discussing retroactive laws:

> "The City argues that its zoning ordinance and the amortization ordinance are not retroactive laws because they do not take effect prior to their passage and only prospectively alter TXI's future use of TXI's property. According to the City, it is irrelevant that TXI's expectations which were developed prior to the laws' enactments were unsettled because the laws look forward on their face. Moreover, even if the laws were retroactive, they would not be considered unconstitutional because they satisfy the Robinson test. TXI counterargues that the laws are retroactive because they prohibit TXI's pre-enactment settled right to the continued legal use of TXI's property. Additionally, TXI argues that the laws are unconstitutional because the City cannot satisfy the Robinson test. In other words, the City presents no evidence to support its contention that the laws serve a public interest, TXI's rights in the property are well-established, and the impairment of the laws on TXI's use of the property is severe. The Court agrees with TXI that the ordinances are retroactive and the City did not satisfy the Robinson test."

*TXI Operations, LP* 2023 U.S. Dist. LEXIS 5100, at *57-58.

> "Here, the City's rezoning and amortization of TXI's property has the same effect as the retroactive ordinances in *Zaatari* and *Muns*—the elimination of well-established and settled property rights that existed before the laws were enacted. As in *Zaatari*, the record establishes that TXI spent a significant amount of time and money investing in its property for the purpose of using it as a concrete batch plant, a use that was lawful when TXI invested its time and money."

*Id.* at *64.

4. In discussing the private property rights of permits, such as a certificate of occupancy:

> "In Texas, a property interest exists where an entity "has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings." *Jabary v. City of Allen*, 547 Fed. App'x 600, 606 (5th Cir. 2013) (quoting City of *Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.—Houston [14th Dist.] 2012)) (cleaned up). "Privileges, licenses, certificates, and franchises [. . . ]as property interests for purposes of procedural due process." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012). However, to have a property interest in a government benefit, a plaintiff must have more than a unilateral expectation of that benefit. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). . . Instead, a plaintiff must have a legitimate claim of entitlement to the benefit. *See Smith*, 559 S.W.2d at 694. Accordingly, "once issued, a license or permit cannot be taken away by the State without due process" because there is a property interest in the license or permit. *See Bowlby*, 681 F.3d at 220; *see also Jabary v. Terrell*, No. 4:10-CV-711, 2014 U.S. Dist. LEXIS 171632, 2014 WL 6984217 (E.D. Tex. July 17, 2014), R&R adopted, No. 4:10-CV-711, 2014 U.S. Dist. LEXIS 171014, 2014 WL 6984126 (E.D. Tex.

> Dec. 10, 2014) ("A property interest such as a 'license or permit,' [. . .]is protected by the Fourteenth Amendment and thus 'cannot be taken away by the State without due process.'").
>
> Here, the City approved TXI's site plan and granted TXI a certificate of occupancy only to later revoke it. *See, e.g., House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654, 657 (Tex. 1965) (holding that, although license to wholesale cigarettes was a privilege that did not have to be granted, once granted, it could not be taken away except for good cause; therefore, wholesaler was entitled to due process). TXI has a protected property interest in the certificate of occupancy, and it cannot be taken away without due process of law. *See Bowlby*, 681 F.3d at 220. It is important to note that this is not a protected property in the use of the property for a particular purpose. Rather, this is a protected property interest in the certificate of occupancy the City issued which allowed TXI to use the property for a particular purpose. If there was no certificate, there would be no protected property interest [. . .] The record must reflect a basis for the conclusion of actual knowledge of the existence of the right or privilege, full understanding of its meaning, and clear comprehension of the consequence of the waiver. *United States v. Escandar*, 465 F.2d 438, 441 (5th Cir. 1972)."

*Id* at *73. (omissions added).

5.  And even if a grace period might be employed, [1] Zaatari teaches how courts should consider analysis of the third Robinson factor with regard to the "elimination of a right":

> "The City emphasizes that the ban does not go into effect until 2022, suggesting that the grace period would allow property owners to adjust their investment strategy to prepare for the discontinuance of type-2 short-term rentals[. . .]But the issue here is not about property owners' right to use their property in a certain way—it is about owners of type-2 short-term rentals retaining their well-settled right to lease their property.
>     We now turn to the third *Robinson* factor, which directs us to consider the extent of the ordinance's impairment to these settled rights. *See Robinson*, 335 S.W.3d at 145. The effect of the ordinance on the property right at issue here is clear—the City's ordinance eliminates the right to rent property short term if the property owner does not occupy the property. The elimination of a right plainly has a significant impact on that right. *See id*. at 148. [. . .]
>     Because the record before us shows that the ordinance serves a minimal, if any, public interest while having a significant impact on property owners' substantial interest in a well-recognized property right, we hold that section 25-2-950's elimination of type-2 short-term rentals is unconstitutionally retroactive."

*Zaatari v. City of Austin*, 615 S.W.3d 172, 191-92 (Tex. App.—Austin 2019, pet. denied).

6.  As the Complaint describes, Plaintiff spent four years with his CO and reasonably relied on the City to continue allowing him to operate his major auto repair business. Plaintiff then petitioned the zoning board of the City to update the zoning for his location to add used car sales. At no time did Plaintiff think that his CO would be unilaterally changed to remove major auto

---

[1] "When determining whether a law disrupts or impairs settled expectations, courts consider whether the law gives parties a 'grace period' to adapt before the law takes effect. *Survitec Surviva*l, 649 S.W.3d at 201-02. Grace periods are required by the Texas Constitution. TEX. CONST. art. III, § 39." *See TXI Operations, LP*, 2023 WL 161942, at *21; *Zaatari*, 615 S.W.3d at 188; *See* Exhibit 1 of Original Complaint.

repair. Defendants did not notify Cerkezi that his CO for major auto repair would be revoked, nor did they notify him that he would no longer be able to do business. Defendants offered no grace period to Plaintiffs. Defendants have impaired Plaintiffs' settled rights in operating a major auto repair on the property and his CO without reasonable notice. *See id.*[2] Defendants' Response and ongoing defense is little more than "you should have known what was going on."

**B. Defendant violated due process by unilaterally revoking his CO.**

7. At no point before the Zoning meeting or the City Council's March 8th meeting was Plaintiff notified his CO would be unilaterally changed and he would be subject to eviction.

8. Defendants argue that a hearing on a change of zoning is equivalent to a vote to revoke a CO from one that Plaintiffs requested into one that Plaintiffs did not request.

9. However, nowhere in Defendants' 120-page appendix is a notice to Plaintiffs to indicate that his CO will be revoked based on City action at any time. The attempt to update the zoning itself to include major auto repair as he had operated is not equivalent to a vote to militantly end a business encouraged by City action for four years. There was no ten days' notice and hearing, there was no grace period, and no compensation at all for the City's mistake. *See* Exhibit 1 of Original Complaint; *see* Tex. Loc. Gov'T Code § 211.007(c). The lack of due process is wanting here, just as it was explained in TXI Operations, 2023 WL 161942, at *21.

> Jabary's Second Amended Complaint alleges that the City deprived him of his right to use of the Certificate of Occupancy "without due process or opportunity to be heard." He alleges that the City is a state actor, that each of the individual defendants held City positions, and that the City and its actors neither provided notice of its intent to revoke his Certificate, nor held any proceeding that he could attend before his Certificate was revoked. Jabary's allegations create a reasonable inference that his procedural due process rights were violated, fulfilling the plausibility standard for pleading under *Iqbal*."

*TXI Operations, LP*, 2023 WL 161942, at *21.

---

[2] *See id*; *TXI Operations, LP*, 2023 WL 161942, at *21; *Zaatari*, 615 S.W.3d at 188; *City of Grapevine v. Muns*, 651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. filed); TEX. CONST. art. III, § 39.

10. Further, the March 8th meeting was full of confusion as clearly seen in discussions between the City Council and Plaintiff Cerkezi:

> Plaintiff Cerkezi: "I don't know how legal this is. . ." 1:29:37. Councilmember Faye: "I understand but, is it possible that the State of Texas has changed the deal on you, but the City has given you the certificate of occupancy for major auto repair, but not for car sales?" 1:29:43. Plaintiff Cerkezi: "I don't know all the laws I just came here to ask how do I start my business in Arlington. . ." 1:30:26.
>
> Councilmember Moise: "It looks to me that. . . the only mistake that was made was that back in some previous CO, major auto sales was added, and we've respected that and kept that in the CO as it moved down the line, is that correct?"
> Gincy Thoppil: "Major auto repair was added in 2015." Councilmember Moise: "It probably should not have been, but we have respected that as a use." 1:31:45.

11. There were other discussions about using the different files as "legal files", Councilmember Moise stated "I wouldn't use this" in regard to the public file that caused the confusion in the first place. *See* 1:32:10. When Councilmember Faye stated: "Will he have to close down as a result of this action?", Gincy Thoppel answered with, "He could continue if the council approves the PD for the major auto repair piece, he could continue his major auto repair because he has a CO for that." *See* 1:38:30. But at no point is the converse stated or notice of such provided.

12. From 1:45:52-1:52:53 the City Council tries to figure out what it is voting on, from "The motion is to approve as written." (1:51:35), to:

> "I will second the motion for the sake of clarity. Again, the motion is to approve the ordinance as written with the addition of auto sales and auto repair, correct Ms. Thoppil? Actually, restate that please I did not state that perfectly." (1:51:53) . . . "A vote yes is going to change both, a vote yes will keep major auto sales and would add auto repair, so if you vote yes on this that is what you vote yes to. Everyone clear on that? Ms. Elise? She is shaking her head on that I have not stated anything incorrectly. Everyone understands what they are voting on?" (1:52:00) (emphasis added)

The vote took place immediately after the above statement. This circus of confusion certainly is not enough notice for Plaintiffs that their CO for major auto repair would be revoked and they would threaten to be kicked out if they did not cease operations.

13. Defendants violated Plaintiffs' due process rights by violating his settled rights in his CO and major auto repair business, revoking his CO after four years without any real notice or comment and now tell him to vacate his premises. Plaintiff did not knowingly waive any of his

due process rights. Defendants with deliberate indifference toward Plaintiff did not afford any due process in regard to revoking his CO for major auto repair.[3] Giving Plaintiff proper notice and comment procedures, or a grace period would not have burdened the City regarding revoking his CO. The final action is substantially different to any alleged notice. *See* Uniform Development Code Section 10.3.6Gj. Defendants have violated Plaintiffs' due process rights.[4]

### C. The City encouraged Plaintiff's major auto repair business for four years, and now seeks to destroy it without compensation or notice.

14. By its actions, the City goes much further than mere indifference; in this case, the City is effectively "appropriating or destroying" Plaintiff's major auto repair business.[5]

15. The City helped Plaintiff to operate his business for four years just to destroy his major auto repair business in revoking Plaintiffs' CO in violation of his settled rights and due process. *See id.* The City has acted in more than just a purely procedural regulatory taking, the City allowed the Plaintiff to move in, lease the property, fix the property up, operate his business for four years, spend significant time and money on the property, and then destroyed his business by unilaterally revoking his CO, begun issuing citations, and threatened him to vacate. *See id*. The City should compensate Plaintiffs for taking his major auto repair business and CO without due process, significantly damaging his business and investment-backed expectations from his issued COs.[6]

---

[3] *TXI Operations, LP*, 2023 WL 161942, at *21, "[T]he measure of what is conscience shocking is no calibrated yard stick." *Lewis*, 523 U.S. at 847. Conduct must do more than "offend some fastidious squeamishness or private sentimentalism." *Rochin*, 342 U.S. at 172. Rather, the government must intend its conduct to injure the plaintiff in some way unjustifiable by any government interest. *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018). In some cases, courts find conduct to be conscious shocking when the plaintiff is injured because of the government's deliberate indifference. *Id.* To prove that conduct shocks the conscious, the Fifth Circuit requires "plaintiffs to show that the State 'at a minimum acted with deliberate indifference toward the plaintiff.'" *Id.* Even this minimum requirement of "deliberate indifference is 'a significantly high burden for plaintiffs to overcome.' *Id.* at 252."
[4] *See* Exhibit 1 of Original Complaint; *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.--Hous. [14th Dist.] 2012); *TXI Operations, LP*, 2023 WL 161942, at *21; *Zaatari*, 615 S.W.3d at 188; *City of Grapevine v. Muns*, 651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. filed); TEX. CONST. art. III, § 39.
[5] *See City of Hous. v. Carlson*, 451 S.W.3d 828, 832 (Tex. 2014); *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922); *TXI Operations, LP*, 2023 WL 161942, at *21; *Zaatari*, 615 S.W.3d at 188; *City of Grapevine v. Muns*, 651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. filed); TEX. CONST. art. III, § 39; *See* Exhibit 1 of Original Complaint.
[6] *See id*; further, Senate Bill No. 929 requires written notice and costs by the City for ceasing Plaintiff's business. *See* Texas Local Government Code, Section 211.006 and 211.019.

### D. This is an exceptional case warranting for estopping the City from revoking Plaintiffs' CO without compensation.

16.     Plaintiff Cerkezi came to the City to specifically ask if he could run his major auto repair business, which it allowed. Even at the March 8th meeting, Plaintiff Cerkezi clearly explained that he came to the city and relied on its instruction so he could learn how to operate his business. Defendants gave Plaintiffs a CO to operate their business and had no objections until Plaintiffs approached the City years later to resolve issue with his dealer's license. Plaintiff has always worked with the City and honestly relied on the City's permission to give him a CO and the previous owner's usage of the property. Further, the City allowed him to operate his business for four years, during which time its agents had plenty of time to inspect and object, but they allowed him to continue investing his life and considerable funds in Arlington.[7]

17.     Further, even the March 8th meeting, which was requested by Plaintiff Cerkezi to update the zoning, did not provide any notice that his CO would be revoked, and he would be threatened to vacate the premises. The City Council spent considerable time trying to figure out themselves how the certificate of occupancy was issued, discussing the transfer to paper to electronic records in 2006 with fields that were not filled out for the public, and concluded with a vote that did not make sense. *See ¶¶ 20-22 of Plaintiff's Reply to Defendant's Response.*

18.     Plaintiff, like in *Rosenthal*, relied on city building officials and inspectors that make a finding that the premises comply with the Building Code and the "provisions of the 'Uniform Development Code' Chapter of the Code and all other applicable development regulations of the City of Arlington to get his major auto repair CO. *See* Exhibit 1 of Original Complaint;

---

[7] *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006); *Maguire Oil Co. v. City of Hous.*, 69 S.W.3d 350, 367 n.7 (Tex. App.—Texarkana 2002, pet. denied); *T&R Assoc. Inc. v. City of Amarillo*, 688 S.W.2d 622, 629 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.)(Indeed, the *Rosenthal* case, and its predecessor case involving the same parties and the same fact situation, *Rosenthal v. City of Dallas*, 211 S.W.2d 279 (Tex. Civ. App. -- Dallas 1948, writ ref'd n.r.e.), are the only instances in this State which we have found in which a court has found circumstances warranting the application of estoppel to a municipality in a zoning ordinance enforcement case.)

Construction Code § 4.14.C. This is not a situation where a business snuck in and started operating, or even obtained a CO and then started acting outside that CO. Unlike the Appellants in *Swain v. Bd. of Adjustment of City of University Park*, 433 S.W.2d 727, 733 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.), Plaintiffs came to the City for help on how to run his business in compliance with the City's code.[8]

19. The previous owner operated without protest from the City and Plaintiff with the City itself worked with him to start the business and gave the CO and allowed Plaintiffs to operate for four years, significantly investing into the property and business. As the cited cases show, the City should be estopped from issuing citations and evicting Plaintiffs for operating their major auto repair business without some measure of due process. *See* Exhibit 1 of Original Complaint.

**E. This Court should issue an injunction.**

    **a. Plaintiffs will be successful on the merits.**

20. Defendants provided no notice, no grace period, no meaningful opportunity to be heard in regard to the City's decision to not allow his major auto repair business after allowing it for at least three years with his issued CO. Plaintiffs have settled rights in operating their major auto repair business after the City allowed them to significantly invest into the community and business for over three years. *Id.*

21. Defendants violate Plaintiffs' due process rights. *Id*. Defendants have threatened to evict Plaintiffs, issued citations, and have provided no grace period or compensation for trying to destroy his business. During the hearing, there was exactly one complaint from a neighbor. During the hearing, the City did not take into account the clean-up of the area and beneficial changes due to

---

[8] Plaintiff: "Before I signed a 10-year contract, and before I did anything else, I came to the City to ask if I could conduct my business at 1850 Park Springs Blvd., which is auto repair and auto sales, same as I had in Fort Worth. . . I came to the City and I ask can I conduct my business here and I was assured that I could. So, with that word I signed the 10-year contract and then I came back to the City to get my CO. When I asked for the CO they said write down major auto repair" and that's what I wrote down." *See* 1:22:30, Recording of March 8th meeting.

Plaintiffs' presence. Defendants' threat to force Plaintiff is a taking that requires just compensation. *Id.*[9] This is an exceptional case where the City has not adequately performed for over eight years in issuing COs, resulting in significant harm to Plaintiffs that have relied on the City in operating the major auto repair business. Defendants should be estopped from destroying Plaintiffs' major auto repair business and operations.[10]

### b. Plaintiffs can establish a substantial threat of irreparable injury if the injunction is not issued.

22. By unilaterally amending Plaintiffs CO without due process after four years of running his business, Plaintiff's settled rights in operating his major auto repair business property will be destroyed. Plaintiff Cerkezi spent his life savings and significant time and effort into cleaning up the property, installing equipment, and providing a phenomenal service to the City of Arlington. Plaintiff Cerkezi is the prime example of the American Dream City citizen, an immigrant who humbly came to the City and got permission to start his business, which he successfully has done so far without any real complaint from neighbors, only to have the Dream City itself after four years destroy his business.[11] The City's unreasonable revocation of Plaintiffs' major auto repair CO destroys Plaintiffs' settled rights if continued. *See id.* The City should be enjoined from issuing and prosecuting the citations, from their threats of Plaintiff to vacate, and allow Plaintiffs to operate their major auto repair business. *See id.*

### c. Plaintiffs' harm drastically outweighs any harm from an injunction.

23. An injunction against the City from issuing and prosecuting citations and allowing Plaintiffs' major auto repair business during the pendency of the case is drastically outweighed by

---

[9] *See also City of Houston*, 393 S.W.3d at 357-8; *Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 658; *Penn Cent.*, 438 U.S. 57 L.Ed.2d at 631.
[10] *See id;* other examples include *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 223 (Tex. App.--San Antonio 2003); *City of White Settlement v. Super Wash, Inc*., 198 S.W.3d 770, 773 (Tex. 2006); *Maguire Oil Co*., 69 S.W.3d at 336.; *T&R Assoc. Inc*, 688 S.W.2d at 629.; *Rosenthal*, 211 S.W.2d at 279; *Swain*, 433 S.W.2d at 733.
[11] *See Carlson*, 451 S.W.3d at 832; *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 414-15 (1922).

the harm of destroying his major auto repair business by changing his CO, prosecuting citations and threats of eviction. Considering that since 2015 the City's building official did not adhere to a correctly issued certificate of occupancy, it takes some gall to suggest the City will be harmed by Plaintiffs' continued operations of his major auto repair business. Zoning requirements for the PD in 2002 allegedly required minor auto repair, but even "Don's Total Car Care" was issued an "auto repair" Certificate of Occupancy on May 3rd, 2002. *See* Exhibit 2 of Original Complaint. For over 20 years the City has not adhered to correctly issued certificates of occupancy. *Id.* The harm to Plaintiffs outweighs the extremely minimal, if not zero, harm of the injunction.

### d. An injunction will serve the public interest.

24. The City was unaware of the Plaintiffs' situation until he appeared before it to fix the issue. *See* ¶¶1-3 & 6-10. The City's retroactive decision to amend Plaintiffs' CO and violating his settled rights do not serve the public interest, any more than the City of McKinny did in *TXI Operations, LP* 2023 U.S. Dist. LEXIS 5100. at 57-101 (E.D. Tex. 2023).

## II.   PRAYER

WHEREFORE Plaintiff respectfully prays that the Plaintiff be awarded an injunction against the City as requested in their *Original Complaint* [Doc. 1], and all other awards Plaintiff shows themselves entitled to.

Respectfully submitted,
Norred Law, PLLC
By: /s/ *Warren V. Norred*
Warren V. Norred, Texas Bar Number 24045094, warren@norredlaw.com
515 E. Border St., Arlington, Texas 76010, P. 817-704-3984
   Attorney for Plaintiffs

**Certificate of Service** – I certify that I served this Reply by the Court's ECF service to the emails of opposing counsel on this November 13, 2023.

s/Warren V. Norred
  Warren V. Norred